IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIFFANY R. BUTZ and
JANICE M. PERRY,

        Plaintiffs,

v.

AMWARE DISTRIBUTION
WAREHOUSES OF GEORGIA,
INC., and AMWARE LOGISTICS
SERVICES, INC.,

        Defendants.

1:13-cv-3204-WSD

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Attorneys' Fees [42] and Plaintiffs' "Suipplemental [sic]" Motion for Attorneys' Fees [51].

### I.   BACKGROUND

This case began as a putative collective action brought by Plaintiffs Tiffany Butz ("Butz") and Janice Perry ("Perry") (together, "Plaintiffs") against Amware Distribution Warehouses of Georgia, Inc. ("Amware Distribution") and Amware Logistics Services, Inc. ("Amware Logistics") (together, "Defendants").  Plaintiffs claim Defendants failed to pay overtime compensation to Plaintiffs for hours

worked in excess of forty (40) hours per week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

The action was filed on September 26, 2013.  About three and a half months later, on January 8, 2014, Plaintiffs filed their motion to conditionally certify the case as a collective action.  This motion, after various extensions in the briefing schedule, was submitted for the Court's consideration, and on April 16, 2014, the Court entered its order denying the collective action motion and allowing it to proceed only on behalf of Plaintiffs Butz and Perry in their individual capacity.  Although Plaintiffs' burden to support conditional certification was lenient, the Court found in its April 16, 2014, Order, that "neither Plaintiff ha[d] presented evidence that they are similarly situated to or that their claims are representative of the class they seek to represent."  (April 16, 2014, Order [38] at 22).[1]

On May 5, 2014, about three (3) weeks after the Court's Order denying conditional certification, Defendant filed its Offer of Judgment (the "Offer").  Plaintiffs accepted the Offer the next day, thus resolving Butz's and Perry's individual overtime claims.  ([40]).  On June 10, 2014, the Clerk of Court entered judgment in favor of Plaintiffs.  ([41]).  Judgment was entered in favor of Plaintiff

---

[1] The parties conducted discovery on the individual and collective action issues until the Court's order denying conditional certification. (See [17, 19, 21, 25-28, 30, 31, 33-36]).  Discovery was not conducted after the Court's April 16, 2014, Order denying conditional certification.

Butz in the aggregate amount of $13,983.90, and in favor of Plaintiff Perry in the aggregate amount of $8,467.02, for a judgment in the total amount of $22,450.92.

The only issue remaining in this case is the attorneys' fees to be awarded. Plaintiffs seek a total fee award of $111,195.00.[2]

## II. DISCUSSION

### A. Legal Standard

In an overtime action under the Fair Labor Standards Act, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). It is within the Court's discretion to determine the amount of

---

[2] The amount claimed is broken down approximately as follows:

|  | Coffman | Reddy | Total |
|---|---|---|---|
| Fees incurred before April 16, 2014, Order | $31,080.00 | $32,152.50 | $63,232.50 |
| Fees incurred after April 16, 2014, Order | $3,600.00 | $4,057.50 | $7,657.50 |
| Fees incurred to litigate fee request through July 16, 2014 | $8,200.00 | $11,220.00 | $19,420.00 |
| Fees incurred responding to Defendants' opposition to fee request | $5,670.00 | $15,215.00 | $20,885.00 |
|  |  | Total Fee Requested: | $111,195.00 |

3

the fee to be awarded.  Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1543 (11th Cir. 1985).

There are certain basic guideposts that our circuit has set that apply to a district court's determination of a reasonable fee award.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonable expended on the litigation multiplied by the reasonable hourly rates."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).[3]  Fundamental to this fee evaluation process is that the amounts for which fees are sought are reasonable for the case in which a plaintiff prevailed.  That is, the Court must consider the results obtained by the plaintiff in evaluating and determining reasonable attorneys' fees.  Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000).  In doing so, the Court may exercise its discretion to reduce the fees requested to avoid an award for litigation that was not necessary to the case but for which the award is sought.  See Sahyers v. Prughm, Holliday & Karatinos, 560 F.3d 1241, 1245-46 (11th Cir. 2009). Put another way,

---

[3] "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonable comparable skills, experience, and reputation."  Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).  The Court determines that the Atlanta metropolitan area is the relevant legal community for the purposes of determining the prevailing market rate for legal fees in this case.

> [i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them. . . . [I]t is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.

Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999). It is against this backdrop that the Court considers the reasonable fees to be awarded to Plaintiffs.

B.  Analysis

Plaintiffs seek an award for their "complete success" in this case which, they claim, "entitles them to a fully compensable fee." (Plaintiffs' Specification and Itemization in Support of Their Request for Attorneys' Fees and Costs [45] ("Plfs' Spec.") at 5). The fees Plaintiffs request are calculated based on the legal services performed through the discovery period and the services provided to litigate this attorneys' fee dispute.[4]

1.  Hourly rates

The Court first reviewed the hourly rates for the attorneys who provided legal services on this matter. Three attorneys billed for their legal services on this matter: K. Prabhaker Reddy, Andrew Y. Coffman and Andrew G. Hall, an associate attorney at Reddy's firm. Having considered the Atlanta market for legal

---

[4] Plaintiffs filed their bill of costs, later adjusted, for an award of costs in the amount of $3,689.04, which Defendants did not contest. Costs in this amount were taxed against Defendants on July 30, 2014 [46].

5

services, of which the Court is significantly familiar, the Court determines that Reddy's hourly rate of $425.00, Coffman's hourly rate of $400.00, and Hall's hourly rate of $175.00, are reasonable for the services performed in this litigation.

### 2. Hours for services performed

The Court has reviewed the information submitted by the parties and has reviewed the pleadings in this action, the docket in the case, and the arguments presented in the parties' submissions on the attorneys' fees request.  The Court has considered the fees for which Plaintiffs have applied based on the Court's significant experience in evaluating statements of attorneys' fees for legal services while the Court was in private practice, and evaluating applications for attorneys' fees submitted for the Court's review and approval over the past ten (10) years.  In conducting this review the Court concludes that Plaintiffs' request for attorneys' fees in the aggregate amount of $111,195.00 is unreasonable, as explained below.

#### a. Attorneys' fees to obtain judgment

Plaintiffs seek attorneys' fees in the amount of $70,890.00 for the services they performed to obtain the judgment in this action.  They argue that this result was obtained by entry of a judgment for the amount of overtime due.  They argue that all of the activity until Defendants' offer of judgment was made was necessary

to obtain the two modest awards made to Plaintiffs Butz and Perry.  The Court disagrees.[5]

This action began as a collective action on behalf of a large class of purported class members.  The case was litigated by both sides expecting the possibility that this matter might be certified as a collective action, with the attendant risks and rewards of this matter proceeding and concluding on behalf of a group much larger than the two named plaintiffs.  The activity in this case reflects that both parties considered this as one involving class claims.  On January 8, 2014, Plaintiffs filed their motion for conditional certification of this case as a collective action.  The Court entered its Order on the motion on April 16, 2014, declining collective action certification.  The Court has reviewed its Order denying collective action status for this case and compared the arguments advanced by Plaintiffs in support of their request for collective action certification.  That review shows that a significant effort was made by Plaintiffs, during all of the initial months during which this case was processed, that was targeted toward advocating this as an action on behalf of a large number of individuals in eighteen (18) of Defendants' different, geographically separate business locations across the

---

[5] In reaching its decision on the attorneys' fees to be awarded, the Court did not use, in any way, the information Defendants submitted concerning settlement discussion between the parties.

7

country.  To argue in support of the award requested that all of the services provided to Plaintiffs from the filing of the Complaint to the entry of the Court's April 16, 2014, Order, ignores the Court's experience that, while class-like allegations are pending, the time and expense to litigate a case is enhanced, requiring more litigation activity and increasing the cost for legal services.  Put another way, it is not credible that all of the claimed activity was as necessary to obtain a judgment of two individual overtime claims as it was to litigate and seek certification of the case as a collective action.[6]  The Court acknowledges that Plaintiffs reduced their fee request to remove what they represent was "all related to their pursuit of the unsuccessful [collective action certification] motion," (Plfs' Spec. at 14), and they excluded some time for inter-counsel communications, (id. at 5).  It was appropriate to do so.

Plaintiffs' counsel ultimately applied for fees incurred through judgment in the aggregate amount of $70,890.00.  The Court's review of the submitted detailed billing records, when considered against the Court's billing and bill-review experiences, supports that a further reduction is required because many of the activities in the case while prosecuted as a collective action increased the legal

---

[6] The fact is the activity that ultimately was necessary to litigate Butz's and Perry's FSLA claims was not significant.  This is underscored by the fact that Plaintiffs took few depositions.

services required beyond those necessary to prosecute only claims on behalf of two identified individuals. Interrogatories, document requests, and conversations between Plaintiffs' counsel and with opposing counsel are customarily conducted more efficiently, and less costly, when collective action allegations are not pending, like they were here. In short, a further reduction of the hours incurred to provide legal services from date the Complaint was filed until entry of the Court's April 16, 2014, Order (the "collective action processing period"), is required to be made. From the Court's detailed review of Plaintiffs' counsel's billing records, it is difficult to determine with specificity the amount of the further fee reduction.[7] The Court determines, in its discretion, that a conservative thirty-five percent (35%) reduction of the hours billed during the collective action processing period is appropriate. This represents a reduction in the amount of $24,881.00 in the fees billed in this matter.

Second, there are the costs incurred by Plaintiffs to litigate their fee request. This is an allowed cost for a plaintiff to recover in an FSLA action. See Spegon v.

---

[7] The generalized, vague descriptions of some of the legal services performed make it difficult to determine whether the fee requested is reasonable. Comparison of Coffman's and Reddy's billing records also undercuts Plaintiffs' assertion regarding exclusion of fees related to their certification motion. For example, on January 7, 2014, Reddy billed one hour for "Telephone conference with co-counsel." Coffman's billing detail for the same day reflects a one hour "Conference call with K.P. Reddy regarding certification motion. NO CHARGE."

Catholic Bishop of Chicago, 175 F.3d 544, 554 (7th Cir. 1999); Oliva v. Infinite Energy, Inc., No. 1:11-cv-232-MP-GRJ, 2013 WL 6815989, at *7 (N.D. Fla. Dec. 24, 2013); cf. Martin v. Univ. of So. Ala., 911 F.2d 604, 610 (11th Cir. 1990) (reasonable "time expended litigating attorney fees is fully compensable" under § 1988 statutory fee-shifting provision).  Here, however, Defendants raised legitimate issues about the fee request resulting in a reduction of the fees awarded. The time billed for the legal services to litigate Plaintiffs' fee request is required, in the Court's discretion, to be reduced by forty percent (40%), for a further reduction of $16,122.00.

Finally, during the Court's review of the hours incurred by the timekeepers representing Plaintiffs the Court determined that Plaintiffs' decision to retain two lawyers with similar professional experience and expertise increased the number of hours incurred to obtain a judgment on the FSLA claims of two individuals. Ordinarily, individual FSLA claims—even claims on behalf of more than one employee of a single defendant—are brought by a single firm and often by a single lawyer in that firm, although it is not unusual for that lawyer to be assisted by a firm associate.  That two partners in two different firms represented Butz and Perry here reflects that strategy to file this as a collective action, and the reduction made above accounts for the increased costs caused by this dual-firm representation and

coordination. That the case proceeded to be litigated by two partners at two firms, including after conditional certification was denied, requires a further reduction to account for the duplication and other inefficiencies caused by this two-firm, two-partner representation of two straightforward individual FSLA claims.[8] The total hours billed should further be reduced by seven percent (7%), for an additional reduction in the amount of $7,783.65 in the fees billed in this matter.

      Having conducted its detailed evaluation of the fees billed in this matter and having determined in its discretion that the fees billed must be reduced for the reasons and in the amounts discussed above, the Court finds that attorneys' fees in the amount of $62,408.35 are reasonable in view of the modest results obtained by Plaintiffs in this matter.

---

[8] The Court also notes that Coffman did not appear in this case until almost three (3) months after the case was filed and two (2) weeks before Plaintiffs' motion for conditional certification was filed. That Plaintiffs decided they needed additional help in this case by retaining a partner at a different law firm increases the amount of and cost for legal services. A straightforward, two-plaintiff action to recover unpaid overtime does not require lawyers from two different firms, even if they sought to appropriate principal responsibilities for different tasks. (See, e.g., Coffman Decl. at Ex. A, 3-5, 11-13; Reddy Decl. at Ex. A, 5-7, 9-12). A further example of the duplication and inefficiencies caused by Plaintiffs' dual partner representation is that on April 1, 2014, Coffman and Reddy both attended the deposition of Defendants' 30(b)(6) Representative.

## III.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs be awarded attorneys' fees in the amount of $62,408.35.

**SO ORDERED** this 8th day of December, 2014.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE